IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN L. GANTT, | ) | |
|     Plaintiff | ) | C.A. 12-262 Erie |
| | ) | |
| v. | ) | Chief Judge McLaughlin |
| | ) | Magistrate Judge Baxter |
| M. HARLOW, et al., | ) | |
|     Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I. RECOMMENDATION**

It is respectfully recommended that:

1. The motion to dismiss filed by Defendants Michael Harlow and Maxine Overton [ECF No. 19] be granted in part and denied in part;

2. The motion to dismiss filed by Defendant Pamela Reynolds [ECF No. 24] be granted; and

3. The motion to dismiss filed by Defendants Robert Maxa and Daniel Telega [ECF No. 27] be denied.

**II. REPORT**

**A. Relevant Procedural History**

On October 25, 2012, Plaintiff John L. Gantt, a prisoner incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"), filed a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983. [ECF No. 3]. He subsequently filed an amended complaint on November 5, 2012, which supplemented the original complaint with additional allegations. [ECF No. 8]. Named as Defendants are: Michael Harlow, former superintendent at SCI-Albion ("Harlow"); Maxine Overton, former Chief Health Care Administrator at SCI-Albion ("Overton"); Robert L. Maxa, a physician under contract with the Pennsylvania Department of Corrections ("DOC") to provide medical services to inmates at SCI-Albion ("Maxa"); Daniel Telega, a physician's assistant formerly under contract with the DOC to

provide medical services to inmates at SCI-Albion ("Telega"); and Pamela J. Reynolds, a physical therapist formerly under contract with the DOC to provide physical therapy services to inmates at SCI-Albion ("Reynolds").

In his *pro se* Complaint, Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. As relief for his claims, Plaintiff seeks declaratory and injunctive relief and compensatory damages.

On February 15, 2003, Defendants Harlow and Overton (identifying themselves as the "DOC Defendants") filed a motion to dismiss [ECF No. 19], asserting that Plaintiff has failed to state a claim of deliberate indifference upon which relief may be granted. On March 5, 2013, Defendant Reynolds filed her own motion to dismiss [ECF No. 24], also arguing that Plaintiff has failed to state a claim upon which relief may be granted. Finally, on March 18, 2013, Defendants Maxa and Telega filed a motion to dismiss Plaintiff's complaint and amended complaint [ECF No. 28], arguing that Plaintiff has failed to state a cognizable claim against them. Plaintiff has filed responses to all motions, essentially re-asserting the allegations of his complaint and amended complaint. [ECF Nos. 31, 32, 33, 38, 39, 40]. This matter is now ripe for consideration.

### B. Relevant Factual History[1]

Plaintiff alleges that in November, 2010, he suffered a cut to his left arm and an injury to his neck while he was confined in a holding facility in Michigan. (ECF No. 3, Complaint, at ¶¶ 8-9). He subsequently began experiencing numbness in his hands and left leg, kidney pain, and loss of balance. (Id. at ¶ 8). By April 2011, Plaintiff was partly paralyzed on his left side, from his shoulder to his foot. (Id. at ¶ 10). He was transferred back to SCI-Albion on May 25, 2011 and was told by the intake nurse that his medical information would be passed on to medical

---

[1] The factual history set forth herein is derived from the allegations of Plaintiff's Complaint and Amended Complaint, which are accepted as true for purposes of deciding Defendants' motions to dismiss, in accordance with Fed.R.Civ.P. 12(b)(6).

staff. (Id. at ¶ 11).

In June or July 2011, Plaintiff was found to have a kidney infection and tests were ordered to determine the cause of his neuropathy. (Id. at ¶ 12). In August 2011, Plaintiff was sent to Hamot Hospital in Erie, Pennsylvania, where he consulted with a neurosurgeon, who advised him that he had a spinal compression that required surgery to relieve the pressure on his nerves. (Id. at ¶ 13). In or around September or October 2011, surgery was performed to remove Plaintiff's cervical disks at levels C4-C5. (Id.). After the operation, Plaintiff was informed that his nerves were damaged but not destroyed, and that medication and therapy would heal the damage. (Id. at ¶ 15). Thirty days after Plaintiff's neck surgery, the neurosurgeon cleared him for therapy and orders were sent to SCI-Albion's medical staff. (Id. at ¶ 16).

In or around January 2012, after not having received any therapy at SCI-Albion, Plaintiff put in sick call slips, to which Defendant Telega responded that the doctor was waiting for clearance from Defendant Overton because Plaintiff required outside therapy. (Id. at ¶ 17). In February 2012, after submitting numerous sick calls, a grievance and a letter to Defendants Overton and Maxa asking why he had not yet started physical therapy, Plaintiff was sent to see Defendant Reynolds; however, Defendant Reynolds informed Plaintiff that she could not do anything for him because he needed to see an outside therapist, and that she would so inform Defendants Maxa and Overton. (Id. at ¶ 18). By March 2012, Plaintiff's wrote Defendant Maxa that his left leg was starting to "give out" and his hands were tingling "at a high level," but Defendant Maxa never wrote back or examined him. (Id. at ¶ 19). In April 2012, Plaintiff was again sent to Defendant Reynolds who said she did not understand why Plaintiff was having problems with his leg, but gave him some exercises to do to keep the leg strong until Plaintiff could find out what was going on. Plaintiff informed Defendant Reynolds that he had not yet started therapy and she responded that she noted it in his file and that the doctor was "pretty good at following up." (Id. at ¶ 20).

In May 2012, Plaintiff's left hand and arm began going numb and he was suffering considerable pain. Plaintiff contacted Defendant Maxa about the pain and informed him that the neurosurgeon had issued a second set of orders for physical therapy. In response, Defendant

Maxa allegedly told Plaintiff that "it's not that bad and you're not going to die." (Id. at ¶ 21).

In July 2012, Plaintiff went back to the neurosurgeon and reported that he was experiencing new areas of pain and that he still had not been sent for therapy. The neurosurgeon responded that he did not know why Plaintiff had not received any therapy yet since he had sent orders to SCI-Albion, and expressed concern that Plaintiff might suffer permanent nerve damage. The neurosurgeon encouraged Plaintiff to do what he could to see a therapist before his next visit in six months. (Id. at ¶ 23). The neurosurgeon also told Plaintiff that an MRI disclosed that the pain Plaintiff was suffering was not from his lower back and that SCI-Albion's medical staff would be informed so that they could start looking for another source of the pain. In addition, the neurosurgeon stated that he would inform SCI-Albion that they should "start some kind of therapy or let a specialist see if any permanent damage has been done." (Id.).

After his follow-up visit with the neurosurgeon, Plaintiff attempted to speak with Defendants Maxa and Overton about his therapy, but neither would answer him in writing or in person. On August 2, 2012, Plaintiff spoke with Defendant Telega about what the neurosurgeon said and asked why Defendant Maxa would not respond to him or send him for therapy. Defendant Telega allegedly responded, "because you cry too much and no one is going to spend money on outside therapy." (Id. at ¶ 24).

In or around October 2012, Plaintiff was experiencing more pain and numbness in his left arm and submitted a sick call to Defendants Telega and Maxa. (ECF No. 8, Amended Complaint, at ¶ 35). In addition, Plaintiff requested to be taken to a "kidney doctor" for the "unbearable" kidney pain he was suffering. (Id.). On or about October 17, 2012, Plaintiff spoke to Defendant Maxa and asked him why he had not been sent out to therapy or to a kidney specialist, and Defendant Maxa responded "my hands are tied." (Id. at ¶ 36). Plaintiff also asked to be scheduled for a physical exam because he had not had one since his incarceration at SCI-Albion. (Id.). On October 23, Plaintiff was called out of his cell to see Defendant Telega for a physical, but none was given. When Plaintiff asked Defendant Telega to check his lower back area, arm, and stomach, Defendant Telega ignored him, told the guards to "take him back" to his cell, and then stated to Plaintiff, "put that in your law suit." (Id. at ¶ 37). Plaintiff alleges that the only

form of treatment he has received for his medical problems is prescription narcotics for the pain.

    **C.**     **Standards of Review**
        **1.**     **Motion to Dismiss**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, 556 U.S. 662 (2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d

Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

Recently, the Third Circuit Court prescribed the following three-step approach to determine the sufficiency of a complaint under Twombly and Iqbal:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011), citing Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S.Ct. at 1947, 1950); see also Great Western Mining & Min. Co. v. Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010).

### 2.  *Pro Se* **Pleadings**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520-521(1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552, 555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard);

Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

**D.   Discussion**

In the medical context, a constitutional violation under the Eighth Amendment occurs only when prison officials are deliberately indifferent to an inmate's serious medical needs. Estelle v. Gamble, 429 U.S. 97 (1976). "In order to establish a violation of [the] constitutional right to adequate medical care, evidence must show (i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).berate indifference to a serious medical need[2] involves the "unnecessary and wanton infliction of pain." Estelle, 429 U.S at 104. Such indifference is manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, denial of prescribed medical treatment, a denial of reasonable requests for treatment that results in suffering or risk of injury, Durmer v. O'Carroll, 991 F.2d 64, 68 (3d Cir. 1993), or "persistent conduct in the face of resultant pain and risk of permanent injury" White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990).

Mere misdiagnosis or negligent treatment is not actionable as an Eighth Amendment claim because medical malpractice is not a constitutional violation. Estelle, 429 U.S. at 106. "Indeed, prison authorities are accorded considerable latitude in the diagnosis and treatment of prisoners." Durmer, 991 F.2d at 67 (citations omitted). Any attempt to second-guess the propriety or adequacy of a particular course of treatment is disavowed by courts since such determinations remain a question of sound professional judgment. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979), quoting Bowring v. Goodwin, 551 F.2d

---

[2] A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." Monmouth County Correction Institute Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

44, 48 (4th Cir. 1977). Furthermore, deliberate indifference is generally not found when some level of medical care has been offered to the inmate. Clark v. Doe, 2000 WL 1522855, at *2 (E.D.Pa. Oct. 13, 2000)("courts have consistently rejected Eighth Amendment claims where an inmate has received some level of medical care").

### 1. Defendants Harlow and Overton

The DOC Defendants argue that Plaintiff has failed to state a claim against Defendants Harlow and Overton because they are non-medical personnel who "relied on and deferred to the professional judgment of medical staff," and were not involved in or responsible for Plaintiff's medical care. (ECF No. 20, DOC Defendants' Brief, at p. 5). In making this argument, the DOC Defendants essentially rely on the Third Circuit Court's decision in Spruill v. Gillis, 372 F.3d 218 (3d Cir. 2004), in which the Court held that "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official … will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." Id. at 236.

Here, the only allegation against Defendant Harlow is that "as then warden of SCI Albion he failed to investigate this matter and order the medical department to send [Plaintiff] out for [his] prescribed medical treatment…" (ECF No. 3, Complaint, at ¶ 27). There are no allegations from which this Court may conclude that Defendant Harlow had reason to believe, or actual knowledge, that prison medical staff was either mistreating or not treating Plaintiff. As a result, Plaintiff's claim against Defendant Harlow should be dismissed.

The same conclusion does not apply to Defendant Overton. Throughout his complaint and accompanying exhibits, Plaintiff documents his efforts to keep Defendant Overton apprised of his alleged lack of medical treatment and the medical staff's failure and/or refusal to send him out for physical therapy as ordered by his treating neurosurgeon. (ECF No. 3, Complaint, at ¶¶ 19, 20, 22, 23, 25; ECF No. 8, Amended Complaint, at ¶ 35; ECF 3-1 at pp. 5, 6, 9, 13). Nonetheless, Plaintiff claims that his follow-up requests for assistance from Defendant Overton were ignored. These allegations are sufficient to set forth a claim of deliberate indifference at

the pleading stage. Thus, the DOC Defendants' motion to dismiss Plaintiff's claim against Defendant Overton should be denied.

### 2. Defendant Reynolds

The allegations against Defendant Reynolds are that she could do nothing to treat Plaintiff for his nerve pain and that she would refer him to an outside therapist. (ECF No. 3, Complaint, at ¶ 18). During a follow-up visit, however, Defendant Reynolds did provide Plaintiff with some exercises he could do to maintain strength in his leg until he could be seen by an outside therapist. (Id. at ¶ 20). Plaintiff's allegations also contain the bald assertion that Defendant Reynolds "lied about the nontreatment she [gave him] and wrote false reports in [his] medical file…" (Id. at ¶ 26). However, Plaintiff fails to allege what the alleged false reports were or how they adversely affected his medical treatment. These allegations, standing alone, fail to set forth a sufficient claim of deliberate indifference upon which relief may be granted against Defendant Reynolds, and this claim should be dismissed.

### 3. Defendants Maxa and Telega

Defendants Maxa and Telega ("Medical Defendants") argue that Plaintiff's "factual allegations do not plausibly establish any entitlement to relief" against them and fail to "specify what care, medication, or treatment [they] failed to provide." (ECF No. 28, Medical Defendants' Brief, at p. 7). The Court respectfully disagrees.

It is abundantly clear to this Court that Plaintiff's primary complaint is that the Medical Defendants ignored his repeated requests to be sent to an outside physical therapist in accordance with the orders of his treating neurosurgeon. Although the Medical Defendants argue that Plaintiff was seen by Defendant Reynolds, SCI-Albion's in-house therapist, it is plain from Plaintiff's allegations that Defendant Reynolds was admittedly unable to provide the type of therapy Plaintiff allegedly needed and agreed that Plaintiff required an outside therapist. In addition, Plaintiff claims that the Medical Defendants failed to provide any treatment for his kidney ailment and nerve problems other than Defendant Maxa's prescription of pain-relieving

narcotics. Moreover, Plaintiff repeatedly alleges that both Medical Defendants ignored his medical complaints and made dismissive remarks that, taken as true, indicate mindsets of indifference. Finally, Plaintiff claims that, as a result of the Medical Defendants alleged deliberate indifference to his medical needs, his pain symptoms have worsened considerably and he risks suffering permanent nerve damage.

Thus, based on the totality of Plaintiff's allegations, the Court finds that Plaintiff has set forth sufficient facts upon which to base a claim of deliberate indifference against the Medical Defendants and said Defendants' motion to dismiss should be denied accordingly.

### III.  CONCLUSION

For the foregoing reasons, it is respectfully recommended that:

1. The motion to dismiss filed by Defendants Michael Harlow and Maxine Overton [ECF No. 19] be granted in part and denied in part, as follows:

   a. The motion to dismiss Defendant Harlow should be granted and said Defendant should be terminated from this case; and

   b. The motion to dismiss Defendant Overton should be denied.

2. The motion to dismiss filed by Defendant Pamela Reynolds [ECF No. 24] be granted and Defendant Reynolds should be terminated from this case; and

3. The motion to dismiss filed by Defendants Robert Maxa and Daniel Telega [ECF No. 27] be denied.

In accordance with the Federal Magistrates Act, 28 U.S.C. § 636(b)(1), and Fed.R.Civ.P. 72(b)(2), the parties are allowed fourteen (14) days from the date of service to file written objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F. 3d 187, 193 n. 7 (3d Cir.

2011).

          /s/ Susan Paradise Baxter
          SUSAN PARADISE BAXTER
          United States Magistrate Judge


Date:   August 27, 2013

cc:     The Honorable Sean J. McLaughlin
       United States District Judge